## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

ARCH INSURANCE COMPANY,                     :
                         Plaintiff,    :         No. 5:15-cv-1223
         v.                                  :
                                          :
TECHNOLOGICAL INVESTMENTS, LLC,   :
MEDI FRIDGE,[1] WELLNESSTEK,             :
TECHNOLOGICAL INVESTMENTS,[2]         :
TRM EMERGENCY VEHICLES, and        :
BOUND TREE MEDICAL, LLC                   :
                        Defendants.   :

_____

### MEMORANDUM
### Defendants Technological Investments, LLC, and Wellnesstek, LLC's Motion to Dismiss, ECF No. 25 – Granted

**Joseph F. Leeson, Jr.**                                                      **March 31, 2016**
**United States District Judge**

## I.      INTRODUCTION

Plaintiff initiated this action on March 11, 2015, seeking to recover damages from an ambulance fire that was allegedly caused by a defectively designed and manufactured product installed therein.  Currently pending is the Motion to Dismiss of Defendants Technological Investments, LLC, and Wellnesstek, LLC ("Moving Defendants") for lack of personal jurisdiction.  ECF No. 25.  For the reasons set forth herein, the Motion is granted.

## II.      BACKGROUND

On March 11, 2015, Plaintiff Arch Insurance Company, the subrogee of Volunteer Medical Services Corps of Lower Merion ("VMSC"), filed a Complaint against Technological

---

[1]      Medi Fridge is a trademark, not properly named as a Defendant, and is dismissed.
[2]      Technological Investments is the same entity as Technological Investments, LLC, and is dismissed.

Investments, LLC ("TIL"), Medi Fridge, Technological Investments d/b/a Medi Fridge, Wellnesstek, LLC, Rosemary Olsen, Richard Olsen, Keith Fairchild, Steven Hansen, TRM Emergency Vehicles, LLC ("TRM"), and Bound Tree Medical, LLC ("Bound Tree").  Compl., ECF No. 1.  Plaintiff alleges that on January 31, 2012, VMSC purchased an ambulance (the "Ambulance").  Id. ¶¶ 17-18.  Plaintiff alleges that prior to April 9, 2013, Western Berks Ambulance Corps purchased and donated several unused Medi-Fridge units to VSMC.  Id. ¶¶ 20-21.  Plaintiff alleges that on April 9, 2013, TRM installed a Medi-Fridge unit in the Ambulance.  Id. ¶ 22.  On March 28, 2014, a fire started in the patient area of the Ambulance causing damages in excess of $600,000.  Id. ¶ 23-28.  Plaintiff alleges that the cause of the fire was determined to be the Medi-Fridge.  Id.  ¶ 25.  Plaintiff alleges that the Medi-Fridge was placed into the stream of commerce by TIL through its distributor Bound Tree.  Id. ¶ 19.

On August 7, 2015, a Motion to Dismiss was filed on behalf of Defendants "Technological Investments, LLC ('TIL'), an inactive Texas company that had a principal place of business in Texas, Wellnesstek, LLC ('Wellnesstek'), a Nevada company with a principal place of business in Texas," Richard Olsen, Rosemary Olsen, Keith Fairchild, and Steven Hansen for lack of personal jurisdiction.  ECF No. 25.  Plaintiff filed an opposition brief on August 21, 2015, ECF No. 27, and on August 26, 2015, Defendant Bound Tree filed a brief in opposition to the Motion to Dismiss, ECF No. 30.  The Moving Defendants thereafter filed Replies.  ECF Nos. 31-32.

On October 14, 2015, Defendant Bound Tree filed a Third Party Complaint against Ningbo Zingao Plastics & Chemistry Co., Ltd., and Ningbo Xingao Plastic and Chemical Co., Ltd.  ECF No. 36.

On January 8, 2016, the Court issued an order allowing the parties to conduct jurisdictional discovery, and directing that supplemental briefs be filed at the close of jurisdictional discovery.  ECF No. 42.  See also ECF Nos. 50, 52 (Orders extending the time to complete jurisdictional discovery).

On February 4, 2016, the Court approved a stipulation to dismiss the individual defendants, Richard Olsen, Rosemary Olsen, Keith Fairchild, and Steven Hansen for lack of personal jurisdiction.  ECF No. 47.

On March 28, 2016, the parties filed supplemental briefs addressing the Motion to Dismiss.  ECF Nos. 53-55.

The Moving Defendants submit that TIL is not an active company and relinquished its charter to do business in Texas in 2008, and that Wellnesstek is a limited liability company under the laws of Nevada with its principal place of business in Texas.  ECF No. 25.  They argue that neither consented to jurisdiction in Pennsylvania and that general personal jurisdiction is lacking. Further, the Moving Defendants assert that there is no specific personal jurisdiction because the only allegation is that the Moving Defendants, at an unidentified time, placed the allegedly defective Medi-Fridge into the stream of commerce through its distributors, and there are no allegations as to when or from what entity Western Berks purchased the Medi-Fridge at issue. The Moving Defendants allege that they do not have the requisite minimum contacts with Pennsylvania and that the cause of action does not arise from any activity in the state.  Further, they contend that there are no allegations of any additional conduct to indicate their intent to serve the Pennsylvania market so as to satisfy a stream of commerce theory.

In their supplemental brief, the Moving Defendants allege that from January 2007 to March 2012 there were no sales by TIL or Wellnesstek within Pennsylvania, nor any TIL or

Wellnesstek products shipped to Pennsylvania.  ECF No. 55.  After March 2012, the Moving

Defendants sold only a total of four products in Pennsylvania, none of which have been

connected to Plaintiff, and only two of which were the same type of product involved in the fire

here.  The last of those orders was in September 2013, more than six months before the fire.  The

Moving Defendants assert that total sales in Pennsylvania for 2012 to 2013 totaled $337.98,

which accounted for only 0.043% of Wellnesstek's total sales for 2012 and only 0.134% of its

total sales for 2013.  Finally, the Moving Defendants contend that their burden to litigate in this

forum is substantial because their principal place of business is in Texas.

Plaintiff contends that the Moving Defendants have a consumer base and "minimum

contacts" in Pennsylvania.  ECF No. 27.  Plaintiff argues that the Moving Defendants sell

products over the internet nationwide and that the Medi-Fridge was placed into the stream of

commerce knowing it would be sold in all fifty states.  Additionally, Plaintiff submits that TIL

and Wellnesstek are the only companies to ever sell products with the "Medi-Fridge" trademark

stamped on them.  ECF No. 54.  Plaintiff argues that Wellnesstek stopped shipping product to

Pennsylvania customers after notice of this lawsuit,[3] which is evidence of minimum contacts

with the state.  Further, Plaintiff asserts that the Master Distribution Agreement between TIL and

Wellnesstek indicates the intent to sell the Medi-Fridge all over the United States, including

Pennsylvania.  Plaintiff argues that while the four sales may seem trivial, they establish

minimum contacts in Pennsylvania.  Additionally, Plaintiff suggests that the Moving Defendants

---

[3]      In response to Plaintiff's suggestion that the Moving Defendants discontinued sales to
avoid jurisdiction in Pennsylvania, and to Bound Tree's allegation that the four sales should be
disregarded as artificially manipulated, the Moving Defendants assert that whether they declined
orders from Pennsylvania because of this lawsuit is irrelevant and unsupported by the evidence.
ECF No. 55.

availed themselves to jurisdiction when they presented for an inspection of the Ambulance on May 20, 2014.

Bound Tree explains that TIL and Tri-anim entered into a Master Distribution Agreement in May 2008, regarding the distribution of the Medi-Fridge.  ECF No. 30-7 (Declaration of Mark Dougherty).  Tri-anim purchased SafeTemp 4L products from TIL and sold them to its customers, including customers in Pennsylvania.  Between December 2008 and February 2013, Bound Tree shipped approximately 50 SafeTemp 4Ls and/or accessories to customers in Pennsylvania.  Bound Tree notes that although TIL's charter was forfeited in February 2008, Richard Olsen executed the Agreement in May 2008, as manager for TIL, for a term of at least five years.  ECF No. 30.  Additionally, Bound Tree notes that the Moving Defendants admit they have directly sold and shipped products to customers in Pennsylvania.  Further, their website, on which products are available for sale, does not set forth any geographical limitation.

The parties attached the deposition testimony of Richard Olsen, the manager of TIL and Wellnesstek, to their supplemental briefs.  Olsen Dep., Ex. A, ECF No. 54 and Ex. C, ECF No. 53.  Mr. Olsen testified that TIL was created in 2003, but became inactive in 2008.  Id. at 11:12-19.  In 2008, TIL was transitioned into Wellnesstek.  Id. at 11:20-23.  TIL's business involved the receipt of products imported from China to be sold directly to consumers or to distributors.  Id. at 13:10 – 14:8.  Tri-anim, which later became Bound Tree, was a distributor.  Id. at 14:20-23, 28:8-11.  TIL sold approximately ten different products, including the Medi-Fridge, which is a small portable refrigerator.  Id. at 15:23 - 16:6.  The Medi-Fridge is a trademark, which is an umbrella brand for the SafeTemp 4 Liter, which TIL also sold.  Id. at 16:10 - 17:16.  TIL stopped selling the SafeTemp 4L in approximately 2008 or 2009, because sales were being referred directly to Bound Tree.  Id. at 28: 1-17.  Mr. Olsen considered Wellnesstek to be a successor to

TIL "only in that it continued to sell the Medi-Fridge unit in addition to other products."  Id. at

19:6-14.  Today, Wellnesstek has only one product, the Medi-Fridge.  Id. at 32: 7-17.

Wellnesstek is incorporated in the state of Nevada and has its principal place of business in

Texas.  Id. at 29:2-10.  Olsen testified that TIL relied solely on the website for advertising, Id. at

25: 3-9, and that Wellnesstek did not advertise or market its products, Id. at 35:10-15.  Neither

TIL nor Wellnesstek ever sold the SafeTemp 4L to Western Berks Ambulance Corporation.  Id.

at 38:17-23.  Olsen testified that if the unit in the Ambulance said Medi-Fridge underneath the

temperature display, it had to have come from either TIL or Wellnesstek.  Id. at 52:23 - 53:7.  If

TIL or Wellnesstek ordered a product from Bound Tree or Tri-anim, neither would ship directly

to a customer of Bound Tree.  Id. at 94:15 - 95:10.  A copy of the Master Distribution Agreement

between TIL and Tri-anim dated May 1, 2008, has also been submitted as an exhibit.  See Ex. B,

ECF No. 54-2.

## III.    STANDARD OF REVIEW – Rule 12(b)(2) Motion to Dismiss for Alleged Lack of Personal Jurisdiction

The Honorable Mitchell S. Goldberg of this Court aptly described the Rule 12(b)(2)

motion to dismiss standard as follows:

> When reviewing a motion to dismiss for lack of personal jurisdiction under
> Federal Rule of Civil Procedure 12(b)(2), I must accept the plaintiff's allegations
> as true and resolve disputed facts in favor of the plaintiff. Pinker v. Roche
> Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has
> raised a jurisdictional defense, the plaintiff must "prove by affidavits or other
> competent evidence that jurisdiction is proper." See Metcalfe v. Renaissance
> Marine, Inc., 566 F.3d 324, 330, 51 V.I. 1219 (3d Cir. 2009). If an evidentiary
> hearing is not held, a plaintiff "need only establish a prima facie case of personal
> jurisdiction." Id.  A plaintiff meets this burden by "establishing with reasonable
> particularity sufficient contacts between the defendant and the forum state."
> Provident Nat'l Bank v. California Federal Sav. & Loan Assoc., 819 F.2d 434 (3d
> Cir. 1987).

Campbell v. Fast Retailing USA, Inc., No. 14-6752, 2015 U.S. Dist. LEXIS 170986, at *5-6

(E.D. Pa. Dec. 22, 2015).

IV.     __STANDARD OF REVIEW – Personal Jurisdiction__[4]

Rule 4(e) of the Federal Rules of Civil Procedure "authorizes personal jurisdiction over

non-resident defendants to the extent permissible under the law of the state where the district

court sits."  Mellon Bank PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).  In

Pennsylvania, the applicable law is the long-arm statute codified at 42 Pa. Cons. Stat. Ann. §

5322.[5]  Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 200 (3d Cir. 1998).  The statute

---

[4]     "Personal jurisdiction can either be general or specific. If a defendant has 'continuous and systematic' contact with the forum state, the defendant may be subject to general personal jurisdiction."  Hershey Co. v. Cerreta Candy Co., No. 4:07-cv-00639, 2008 U.S. Dist. LEXIS 15506, at *7 (M.D. Pa. Feb. 7, 2008).  In this case, however, there are no allegations of general personal jurisdiction.

[5]     Pennsylvania's long-arm statute provides:

(a) General rule. - -

A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person:

   (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

      (i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

      (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

      (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

. . . .

(b) Exercise of full constitutional power over nonresidents. --

In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

(c) Scope of jurisdiction. --

When jurisdiction over a person is based solely upon this section, only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him.

permits the Pennsylvania courts to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the Due Process Clause of the Fourteenth Amendment.  Id.; Farino, 960 F.2d at 1221.  The Supreme Court has determined that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945).

The court must engage in a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum state; (2) whether the litigation arises out of or relates to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with fair play and substantial justice."  D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  "The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum."  D'Jamoos, 566 F.3d at 102-03.  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  If the first two elements are satisfied, "a court has the option of evaluating whether exercising jurisdiction comports with notions of 'fair play and substantial justice,'" such that "even if a defendant has the requisite minimum contacts with the forum state, other factors may militate against exercising jurisdiction."  Pennzoil Prods. Co., 149 F.3d at 205.

In many products-liability cases, the seller does not come in direct contact with the forum state, except through intermediaries such as distributors.  "In response to this phenomenon,

----

. . . .
42 Pa. Cons. Stat. Ann. § 5322.

courts have developed the 'stream of commerce' theory by which specific jurisdiction is asserted over a nonresident defendant which injected its goods, albeit indirectly, into the forum state and either 'derived [a] substantial benefit from the forum state or had a reasonable expectation of [deriving a substantial benefit from it].'" Pennzoil Prods. Co., 149 F.3d at 203 (citing Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102 (1987); Max Daetwyler Corp. v. A W. German Corp., 762 F.2d 290, 300 (3d Cir. 1985)).  But, "the mere knowledge or awareness that one's products will end up in the forum state without some regularity of shipment would not be enough." Renner v. Lanard Toys, 33 F.3d 277, 282 (3d Cir. 1994).  The "foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476.  "Thus courts in appropriate [cases] may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." World-Wide Volkswagen Corp., 444 U.S. at 292 (internal citations omitted); Shanks v. Wexner, No. 02-7671, 2003 U.S. Dist. LEXIS 4014, at *3 (E.D. Pa. Mar. 17, 2003) ("In making this determination we should consider the following: 1) the interests of the forum state; 2) the plaintiff's interest in obtaining relief; 3)

the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 4) the shared interest of the several States in furthering fundamental substantive social policies." (citing <u>Mesalic v. Fiberfloat Corp.</u>, 897 F.2d 696, 701 (3d Cir. 1990))).  "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy. Once the plaintiff has made out a prima facie case of minimum contacts, [] the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  <u>Grand Entertainment Group v. Star Media Sales</u>, 988 F.2d 476, 483 (3d Cir. 1993) (internal quotations omitted).

## V.    <u>ANALYSIS</u>

Pennsylvania's long-arm statute authorizes personal jurisdiction over a nonresident "to the fullest extent allowed under the Constitution of the United States."  42 Pa. Cons. Stat. Ann. § 5322(b).  "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."  <u>Burger King Corp.</u>, 471 U.S. at 474.  The Supreme Court in <u>Asahi</u> addressed the question of whether the mere awareness by a foreign defendant that its products would reach the forum state in the stream of commerce constitutes "minimum contacts" such that the exercise of jurisdiction 'does not offend "traditional notions of fair play and substantial justice."'"  <u>Asahi Metal Indus. Co.</u>, 480 U.S. at 105 (quoting <u>Int'l Shoe Co.</u>, 326 U.S. at 316).  The Court was divided on the scope of the stream of commerce theory. Justice O'Connor, writing for a plurality of four stated, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State," but Justice Brennan, writing for four justices in a concurring opinion, explained that "most courts and commentators have found that jurisdiction premised on the placement of a

product into the stream of commerce is consistent with the Due Process Clause, and have not required a showing of additional conduct." Asahi Metal Indus. Co., 480 U.S. at 112, 117.

Here, the Moving Defendants received imported products and sold them to consumers and to distributors. Among the products sold were the SafeTemp 4 Liter and the Medi-Fridge. On May 1, 2008, TIL entered into a five-year agreement to appoint Tri-anim as its exclusive distributor of the Medi-Fridge Safe Temp 4L for the entire United States, including Pennsylvania. See Ex. B (Master Distribution Agreement), ECF No. 54-2. Between December 2008 and February 2013, Bound Tree shipped approximately 50 SafeTemp 4Ls and/or accessories to customers in Pennsylvania. Accordingly, analysis of the stream of commerce theory to establish specific personal jurisdiction is appropriate here.

Plaintiff first alleges that the Moving Defendants are the only companies to sell the SafeTemp 4L with the "Medi-Fridge" trademark stamped on it and that because the unit installed in the Ambulance that caught fire said "Medi-Fridge," it could not have been sold directly from the manufacturer. However, while this may be evidence that the Medi-Fridge at issue was sold by the Moving Defendants, there are no allegations that they, or their authorized distributor, sold the Medi-Fridge to a consumer in Pennsylvania. The Complaint alleges only that prior to April 9, 2013, Western Berks Ambulance Corps purchased several Medi-Fridge units and donated unopened Medi-Fridge units to VSMC. See Compl. ¶¶ 20-21. There are no allegations as to when, where, or from whom Western Berks Ambulance Corps purchased the units.[6] If, for example, Western Berks Ambulance Corps purchased the Medi-Fridge units from a customer in New Jersey and brought them into Pennsylvania, it cannot be said that the Moving Defendants

---

[6]     Mr. Olsen testified that neither TIL nor Wellnesstek ever sold the SafeTemp 4L to Western Berks Ambulance, Corporation. Olsen Dep. 35:10-15. Although the Court must view disputed facts in the light most favorable to Plaintiff, he has not offered any specific factual allegations that would dispute this testimony.

"should reasonably anticipate being haled into court in [Pennsylvania]."  See World-Wide Volkswagen Corp., 444 U.S. at 297.

Second, contrary to Plaintiff's suggestion that the decision of the Moving Defendants to stop selling products to Pennsylvania customers after being informed of this lawsuit is evidence of minimum contacts, the fact that they discontinued sales to Pennsylvania after learning that their distributor sold products in Pennsylvania shows that they did not intend to submit to jurisdiction through "additional conduct" with the forum state.  See Whitecap Inv. Corp. v. Putnam Lumber & Exp. Co., No. 2010-139, 2013 U.S. Dist. LEXIS 39413, at *33 (D.V.I. Mar. 21, 2013) (discussing Justice Brennan's comment in Asahi about "additional conduct").

Next, Plaintiff asserts that the Master Distribution Agreement is evidence of the Moving Defendants' intent that the Medi-Fridge be sold all over the United States, including Pennsylvania.  Contrary to this contention, the Master Distribution Agreement is proof only that the Moving Defendants were aware the Medi-Fridge would be sold in the United States, not that they intended to serve, or target, the Pennsylvania market.  See Yohn v. Waco Equip. Co., No. 03-904, 2003 U.S. Dist. LEXIS 22224, at *11-12 (E.D. Pa. Nov. 20, 2003) (finding that the third-party defendant's distribution agreement evidenced only that the third-party was aware its products would be sold in the United States, and not its intent to avail itself to Pennsylvania).

Similarly, the fact that their distributor sold to customers in Pennsylvania is not evidence that the Moving Defendants targeted the forum state.  There are no allegations that the Moving Defendants knew about the distribution chain, that it advertised in or directed marketing at Pennsylvania, or that it had any physical presence in the Commonwealth.  Compare Kim Ly Chea v. Wilhelm Fette GmbH, No. 02-8667, 2004 U.S. Dist. LEXIS 1157, at *10-11 (E.D. Pa. Jan. 7, 2004) (determining that the defendant had sufficient minimum contacts by directly

authorizing its distributor to sell and deliver the allegedly defective product to the plaintiff's former employer, a Pennsylvania company), with Potts v. Marks Controls Corp., No. 94-6291, 1995 U.S. Dist. LEXIS 13088, at *7-8 (E.D. Pa. Sept. 6, 1995) (concluding that there was no personal jurisdiction because the defendant "did not direct its activities at corporations or residents within this forum such that it should have reasonably anticipated being haled into court in Pennsylvania," maintained no physical presence within the state, did not "advertise in, nor has it made any sales in, the Commonwealth," and did not know "the chain of distribution such that it should have anticipated that its products would be sold in Pennsylvania").

In Kingsmill, the plaintiff made many of the same arguments presented here to support specific personal jurisdiction, but the court determined that the defendant lacked the necessary minimum contacts to satisfy due process.  See Kingsmill v. Roundo AB, No. 12-3524, 2013 U.S. Dist. LEXIS 100943, at *21-22 (E.D. Pa. July 18, 2013).  As in the instant action, the defendant's products were designed for a world market, and its distribution agreement covered the entire United States.  Id.  However, like here, there was no evidence regarding the distributor's marketing efforts, if any, within Pennsylvania, nor any evidence of awareness by the defendant of those efforts.  Id.  Also, the defendant's sale of its products in Pennsylvania was small, constituting only 1% to 6% of its annual sales, and Pennsylvania comprised a small number of the distributor's annual sales.  Id.  In the instant action, Bound Tree states that between December 2008 and February 2013, it shipped approximately 50 SafeTemp 4Ls and/or accessories to customers in Pennsylvania, see ECF No. 30-7 (Declaration of Mark Dougherty), but there is no evidence as to what percentage this business was to its total sales.

Consequently, whether under Justice O'Connor's view of the stream of commerce theory or the more expansive view discussed by Justice Brennan, Plaintiff has failed to establish

minimum contacts in Pennsylvania based on a stream of commerce analysis.  The Court must therefore consider whether the Moving Defendants had any direct sales to Pennsylvania that would establish the requisite minimum contacts.

While "the absence of direct sales or shipments into the forum is not dispositive, . . . the presence of direct shipments will show the defendant's purposeful availment." Renner v. Lanard Toys, 33 F.3d 277, 282 (3d Cir. 1994).  Here, the Moving Defendants' four direct sales to Pennsylvania customers are sufficient to satisfy the first part of the minimum contacts inquiry. See Heavy Iron Oilfield Servs., L.P. v. Mt. Equip. of N.M., Inc., No. 14-39, 2014 U.S. Dist. LEXIS 107648, at *10-11 (W.D. Pa. Aug. 6, 2014) (finding that two shipments to the plaintiff in Pennsylvania, of the allegedly defective product, is sufficient to find that the defendant directly targeted this forum thereby satisfying the purposeful availment part of the specific jurisdiction analysis).  The argument of the Moving Defendants that these sales accounted for only 0.043% of Wellnesstek's total sales for 2012 and only 0.134% of its total sales for 2013, is unpersuasive. See R.Q.C. Ltd. v. JKM Enters., No. 1:13-cv-307, 2014 U.S. Dist. LEXIS 133225, at *12 (W.D. Pa. Sept. 23, 2014) (determining that the fact that only 2.2% of the defendant's sales revenue stemmed from sales in the forum state was not determinative).

Nevertheless, "[i]n order to have specific jurisdiction, . . . the defendant must have the requisite minimum contacts with the forum state through which the defendant purposely availed himself of the benefits of the forum state[, and] the plaintiff's claims must arise from those contacts." Standard Knitting, Ltd. v. Outside Design, Inc., No. 00-2288, 2000 U.S. Dist. LEXIS 8633, at *4-5 (E.D. Pa. June 21, 2000) (internal citations omitted).  "[T]his second [element] of the specific jurisdiction inquiry requires, as a starting point, 'but-for causation,' meaning that 'the plaintiff's claim would not have arisen in the absence of the defendant's contacts.'"

Willyoung v. Colo. Custom Hardware, Inc., No. 1:08-cv-17, 2009 U.S. Dist. LEXIS 91557, at *10, 18 (W.D. Pa. Sept. 30, 2009) (explaining that while a defendant may have "transacted business" in Pennsylvania by virtue of its sales to a Pennsylvania resident, only a cause of action arising from those sales may serve as the basis for exercising jurisdiction pursuant to 42 Pa. Cons. Stat. Ann. § 5322(c)).  Because there is no allegation that the instant cause of action arises from any of the four direct sales, Plaintiff has failed to establish the second part of the personal jurisdiction inquiry.  See Ackourey v. Sonellas Custom Tailors, 573 F. App'x 208, 211 (3d Cir. 2014) (holding that "the litigation must 'arise out of or relate to'" the defendant's minimum contacts with the forum state (quoting Burger King Corp., 471 U.S. at 472)).

Additionally, the Court rejects Plaintiff's suggestion that the Moving Defendants availed themselves to jurisdiction in Pennsylvania by appearing for an inspection of the Ambulance. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson, 357 U.S. at 253.  "A proper analysis should focus . . . on whether a plaintiff's unilateral conduct actually generates all of the significant contacts between the litigation and the forum, and on the desire to protect a wholly passive defendant from being forced to appear in an inconvenient forum on the basis of contacts it did not initiate." Strick Corp. v. A. J. F. Warehouse Distributors, Inc., 532 F. Supp. 951, 958 (E.D. Pa. 1982); Insurance Data Processing, Inc. v. Old Charleston Ins. Cos., No. 88-4479, 1989 U.S. Dist. LEXIS 15585, at *25 (E.D. Pa. Dec. 28, 1989) (finding that almost all significant events were either initiated by the plaintiff or were the result of its actions, and that it could not properly exercise personal jurisdiction over the defendants).

Here, Plaintiff informed the Moving Defendants that it would be conducting an inspection of the Ambulance "for which we request your attendance." Ex. C (letter dated April 23, 2014), ECF No. 54-3. A few weeks later, Plaintiff advised the Moving Defendants of the date and location, in Conshohocken, Pennsylvania, of the inspection and thanked them "in advance for [their] anticipated cooperation." Ex. C (letter dated May 6, 2014), ECF No. 54-3. These letters establish that Plaintiff unilaterally drew the Moving Defendants into Pennsylvania, and the Moving Defendants cannot be deemed to have "purposefully availed" themselves of the privilege of conducting business in the forum state by attending this inspection. See Elliott Reihner Siedzikowski & Egan, P.C. v. Richter, No. 96-3860, 1998 U.S. Dist. LEXIS 13061, at *21-22 (E.D. Pa. Aug. 21, 1998) (finding that personal jurisdiction was lacking because the defendant's contacts in Pennsylvania, including telephone calls, mail communication, and an unspecified number of meetings, were not initiated by the defendant).

Accordingly, Plaintiff has not established the Court's personal jurisdiction over the Moving Defendants.

## VI.    CONCLUSION

For the reasons set forth herein, the Motion to Dismiss Defendants TIL and Wellnesstek for lack of personal jurisdiction is granted.

A separate Order will be issued.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

16